## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TYLER MARTIN, *et al.*,<br><br>                    *Plaintiffs*,<br><br>            -against-<br><br>CHICK-FIL-A, INC., *et al.*,<br><br>                    *Defendants*. | Civil Action No.: 24-5451<br><br>**DEFENDANT'S NOTICE OF REMOVAL**<br><br>***Electronically Filed*** |

**TO:   THE HONORABLE JUDGES OF THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**

**PLEASE TAKE NOTICE THAT** Defendant Chick-fil-A, Inc. ("CFA, Inc.") hereby removes this case from the Supreme Court of the State of New York for the County of New York to the United States District Court for the Southern District of New York. This Court has subject matter jurisdiction under the Class Action Fairness Act of 2005 ("CAFA") because this matter was brought as a class action, diversity of citizenship exists between one or more members of the putative class and CFA, Inc., the number of proposed class members exceeds 100 individuals, and the amount in controversy exceeds $5 million in the aggregate. 28 U.S.C. §§ 1332(d), 1453.

### I.    FACTUAL BACKGROUND

1.    This lawsuit is a civil action within the meaning of the Acts of Congress relating to removal of class actions. *See* 28 U.S.C. § 1453.

2.    On or about June 18, 2024, Plaintiffs Tyler Martin, Cristian Torres, and Brittany Rivera ("Plaintiffs") commenced an action captioned *Tyler Martin, Cristian Torres, and Brittany Rivera on behalf of themselves and on behalf of all other persons similarly situated v. Chick-fil-A, Inc., Sonrisa Franchise Holdings, Inc., Mega Franchise Holdings Inc., and any other affiliated entities that employed Plaintiffs and members of the putative class.* Such action was assigned State

Court Index No. 653056/2024 (the "Complaint"). A true and correct copy of the Complaint is attached hereto as <u>Exhibit A</u>.

3.      CFA, Inc.'s registered agent received a copy of the Summons and Complaint in New York, New York on June 25, 2024. As of the date of this filing, CFA, Inc. has not received notice of having been served with any other process, pleadings, or orders in the State Court Action.

4.      Plaintiffs purport to bring this action as a class action pursuant to Article 9 of the New York Civil Practices Law and Rules. Complaint (Ex. A), ¶ 31. Plaintiffs seek to represent a class allegedly consisting of "[a]ll current and former employees working for Defendants in Chick-fil-A locations in the State of New York during the Class Period." *Id*.[1]

5.      Plaintiffs' Complaint seeks to recover uniform maintenance pay and uniform purchase costs, prejudgment and post-judgment interest, attorneys' fees and costs, and "[s]uch other relief as [] deem[ed] just and proper," based on the alleged unlawful failure to pay uniform maintenance pay pursuant to Article 19 of the New York Labor Law and its supporting regulations. *Id*. at ¶¶ 1, 118, 123, and "Prayer for Relief."

6.      Plaintiffs' Complaint is framed as a putative class action and seeks recovery for purported wage violations under New York law. Therefore, for the purposes of this Notice of Removal, this matter is a class action as that term is defined pursuant to 28 U.S.C. §§ 1332(d)(1)(B)

---

[1] CFA, Inc. recites the allegations in the Complaint solely because courts "generally evaluate jurisdictional facts, such as the amount in controversy, on the basis of the pleadings, viewed at the time when defendant files the notice of removal." *Blockbuster, Inc. v. Galeno*, 472 F.3d 53, 57 (2d Cir. 2006). Otherwise, CFA, Inc. strongly contests the allegations in the Complaint. For example, CFA, Inc.—the franchisor of the Chick-fil-A brand of quick-service restaurants—strenuously disputes that it can be liable for claims involving employees who worked for independent franchisees who own and operate individual Chick-fil-A brand restaurants. *See, e.g.*, *Acharya v. 7-Eleven, Inc*., No. 1:18-CV-08010-PAC, 2019 WL 6830203, at *2 (S.D.N.Y. Dec. 13, 2019) ("the weight of authority indicates that plaintiffs face a hard road when seeking to impose joint employer liability on franchisors.") (collecting cases).

and 1453.[2]

## II.    THIS COURT HAS JURISDICTION OVER THIS MATTER PURSUANT TO THE CLASS ACTION FAIRNESS ACT OF 2005.

7.      This Court has jurisdiction over this matter pursuant to CAFA. *See* 28 U.S.C. §§ 1332(d), 1453. Under CAFA, district courts have original diversity jurisdiction over a class action whenever (1) "any member of a [putative] class of plaintiffs is a citizen of a State different from any defendant", 28 U.S.C. § 1332(d)(2)(A); (2) "the number of members of all proposed plaintiff classes in the aggregate is" not less than 100, 28 U.S.C. § 1332(d)(5)(B); and (3) "the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs", 28 U.S.C. § 1332(d)(2).

8.      All CAFA requirements are satisfied in this case. Further, no exception to the exercise of federal jurisdiction applies. *See, e.g.*, 28 U.S.C. § 1332(d)(4)(A)-(B). Therefore, removal of this case is proper pursuant to 28 U.S.C. §§ 1332, 1441, 1446, and 1453.

### A.    Diversity of Citizenship Exists.

9.      To satisfy CAFA's diversity requirement, a party seeking removal need only show that minimal diversity exists—that is, that one putative class member is a citizen of a state different from that of one defendant. 28 U.S.C. § 1332(d)(2); *see Hines v. Overstock.com, Inc.*, No. 09-CV-991, 2013 WL 4495667, at *5 (E.D.N.Y. Aug. 19, 2013).

#### 1.    *Plaintiffs Are Citizens of New Jersey and New York, Respectively.*

10.    An individual is a citizen of the state in which he or she is domiciled. *See Adrian Family Partners I, L.P. v. ExxonMobil Corp.*, 79 F. App'x 489, 491 (2d Cir. 2003). Citizenship is determined by the individual's domicile at the time the lawsuit is filed in state court. *See Law Offs.*

---

[2] CFA, Inc. does not concede, and specifically disputes, Plaintiffs' contention that this lawsuit may properly proceed as a class action.

*of K.C. Okoli, P.C. v. BNB Bank, N.A.*, 481 F. App'x 622, 625 (2d Cir. 2012) ("Jurisdictional facts such as the amount in controversy are evaluated on the basis of the pleadings viewed at the time when the defendant files the notice of removal.").

11.     Plaintiff Tyler Martin alleges that he resides in New Jersey, Complaint (Ex. A.), ¶ 3, and upon information and belief, is a citizen of New Jersey.

12.     Plaintiff Cristian Torres alleges that he resides in New York, *id.* at ¶ 4, and upon information and belief, is a citizen of New York.

13.     Plaintiff Brittany Rivera alleges that she resides in New York, *id.* at ¶ 5, and upon information and belief, is a citizen of New York.

14.     Upon information and belief, no Plaintiff is a citizen of Georgia.

> **2.     *CFA, Inc. is Not a citizen of New Jersey or New York.***

15.     CFA, Inc. is a Georgia corporation with its principal place of business (where the majority of its executive and administrative functions are performed) at 5200 Buffington Rd, Atlanta, Georgia 30349. *Id.* at ¶ 7; *see Duzer Realty Corp. v. U.S. Underwriters Ins. Co.*, No. 12-CV-926, 2012 WL 2872306, at *1 (E.D.N.Y. July 12, 2012) ("The phrase 'principal place of business' refers to the place where the corporation's high level officers direct, control, and coordinate the corporation's activities.") (citing *Hertz v. Friend*, 559 U.S. 77, 130 S. Ct. 1181, 1186 (2010)).  CFA, Inc. is not now, and was not at the time of the filing of this action, a citizen and/or resident of the States of New Jersey or New York within the meaning of the Acts of Congress relating to the removal of class actions. *See Avon Prods., Inc. v. Edgewater Tech.-Ranzal, LLC*, No. 15-CV-4932, 2015 WL 4560960, at *1 (S.D.N.Y. July 23, 2015).

16.     Therefore, there is diversity of citizenship pursuant to CAFA because a member of the putative class "is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2).

**B.    The Proposed Class Consists of at Least 100 Proposed Class Members.**

17.    Removal under CAFA is appropriate where there are at least 100 members of all proposed plaintiff classes in the aggregate. *See* 28 U.S.C. § 1332(d)(5)(B).

18.    The Complaint alleges claims on behalf of Plaintiffs and a putative class of similarly situated individuals who allegedly work or have worked at Chick-fil-A brand restaurant businesses owned and operated by various franchisees in New York State. *See* Complaint (Ex. A), ¶ 1. Specifically, Plaintiffs' proposed class consists of "on-exempt [sic] employees paid on on [sic] an hourly basis who worked for Defendants in its Chick-fil-A fast food locations in the State of New York at any time during the period commencing six years prior to the filing of this action and continuing until such further date as the practices complained of are discontinued[.]" *Id*. at ¶ 26.

19.    The Complaint further alleges that "Chick-fil-A operates approximately 54 locations in New York State . . . employing an estimated 2,400 people across the state." *Id.* at ¶ 2.[3]

20.    As such, the putative class as set forth in Plaintiffs' Complaint exceeds 100 individuals, and the second jurisdictional requirement under CAFA is satisfied. *See* 28. U.S.C. § 1332(d)(5)(B).

**C.    The Amount in Controversy Requirement Is Satisfied.[4]**

21.    Pursuant to CAFA, the claims of the individual members in a class action are

---

[3] As noted above, *see n. 1 supra*, CFA, Inc. is the franchisor of the Chick-fil-A brand of restaurant businesses.  It did not employ any of the named Plaintiffs and cannot be found liable for the alleged actions of independent franchisees who own and operate Chick-fil-A brand restaurants.

[4] This Notice of Removal addresses the alleged nature and amount of damages placed at issue by Plaintiffs' Complaint. CFA, Inc.'s reference to specific damages amounts and its citation to comparable cases are provided solely for the purpose of establishing that the amount in controversy is more likely than not in excess of the jurisdictional minimum. Importantly, no liability will ultimately lie against CFA, Inc. because, among other reasons, CFA, Inc. did not employ Plaintiffs. *See, e.g.*, *In re Domino's Pizza Inc.*, 2018 WL 4757944, at *4 (S.D.N.Y. Sept. 30, 2018) ("[C]ourts have concluded that the type of standard setting and oversight exercised by a franchisor does not rise to the requisite level of control to constitute joint employer status."). CFA, Inc. further maintains that Plaintiffs' claims are without merit and that CFA, Inc. is not liable to Plaintiffs or the putative class they purport to represent. CFA,

aggregated to determine if the amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs. *See* 28 U.S.C. § 1332(d)(6).

22.    As the Supreme Court has held, "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co. v. Owns*, 135 S. Ct. 547, 554 (2017).

23.    Additionally, Congress intended for federal jurisdiction to attach under CAFA "if the value of the matter in litigation exceeds $5,000,000 either from the viewpoint of the plaintiff or the viewpoint of the defendant, and regardless of the type of relief sought (*e.g.*, damages, injunctive relief, or declaratory relief)." S. Rep. No. 109-14, *as reprinted* in 2005 WL 627977, at *42–43 (1st Sess. 2005).

24.    To satisfy the amount-in-controversy requirement under CAFA, the party seeking removal "must show that it appears to a 'reasonable probability' that the aggregate claims of the plaintiff class are in excess of $5 million." *Smith v. Manhattan Club Timeshare Ass'n, Inc.*, 944 F. Supp. 2d 244, 250 (S.D.N.Y. 2013) (citing *Blockbuster*, 472 F.3d at 59). In determining whether the removing defendants have met this burden, courts look first to the complaint and then to the defendant's petition for removal. *Id*.

25.    Once the party seeking removal has satisfied its burden of demonstrating that the amount in controversy has been met, plaintiffs can defeat jurisdiction only by demonstrating "to a legal certainty" that the amount recoverable does not meet the $5,000,000 threshold. *See Scherer v. Equitable Life Assurance Soc'y of U.S.*, 347 F.3d 394, 397 (2d Cir. 2003). Under controlling

---

Inc. specifically denies that Plaintiffs or any other alleged class member (1) have a viable claim against CFA, Inc.; and/or (2) have suffered any damage as a result of any act or omission by CFA, Inc. No statement or reference contained in this filing—or any other filing—shall constitute an admission of liability or a suggestion that Plaintiffs will or could actually recover any damages amounts based upon the allegations contained in the Complaint or otherwise.

Second Circuit precedent, this a "difficult burden to overcome." *Hines*, 2013 WL 4495667, at *6 (citing *Chase Manhattan Bank, N.A. v. Am. Nat'l Bank and Trust Co.*, 93 F.3d 1064, 1070 (2d Cir. 1996)). Under the "legal certainty" standard, plaintiffs must demonstrate that "[t]he legal impossibility of recovery [is] so certain as virtually to negative [their] good faith in asserting the claim." *Scherer*, 347 F.3d at 397; *see Hines*, 2013 WL 4495667, at *6.

26.     Further, CAFA's legislative history makes clear that doubts regarding the maintenance of class actions in state or federal court should be resolved in favor of federal jurisdiction. *See, e.g.*, S. Rep. 109-14, reprinted in 2005 WL 627977, at *43 ("Overall, new section 1332(d) is intended to expand substantially federal court jurisdiction over class actions. Its provisions should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant.").

27.     While CFA, Inc. denies Plaintiffs' factual allegations and denies that Plaintiffs or any member of the putative class they purport to represent are entitled to the relief sought in the Complaint, CFA, Inc.—based on the allegations in Plaintiffs' Complaint—has established herein to a "reasonable probability" that the amount in controversy of the putative classes as alleged in the Complaint exceeds $5,000,000.

### 1.     *Information Relevant to Amounts at Issue.*

28.     Plaintiffs' Complaint defines the class to include all individuals paid on an hourly basis employed at all New York Chick-fil-A brand restaurant businesses (which are owned and operated by various franchisees) who "were required to wear and purchase uniforms and not paid weekly uniform maintenance pay or reimbursed for the cost of purchasing the required uniforms," Complaint (Ex. A), ¶ 1, at any time "during the period commencing six years prior to the filing of this action and continuing until such further date as the practices complained of are discontinued[,]" *id.* at ¶ 26.

29.     The statute of limitations for Plaintiffs' claims based on alleged violations of the New York Labor Law is six years. Plaintiffs filed the Complaint on or around June 18, 2024. Thus, for purposes of establishing federal jurisdiction under CAFA, the class period with respect to Plaintiffs' claims under the New York Labor Law is June 18, 2018, through the conclusion of this action (the "Class Period").

### 2.     *Calculation of Plaintiffs' Claimed Damages.*

30.     In their Cause of Action, Plaintiffs allege that "Defendants required Plaintiffs and the Class to wear a uniform consisting of a shirt emblazoned with Defendants' logo and pants" and that "it was a condition of their employment to wear them during each shift." Complaint (Ex. A), ¶¶ 109-10.

31.     Plaintiffs further allege that "Defendants never paid Plaintiffs any uniform maintenance pay or reimbursement for the cost of maintaining uniforms" and that "Defendants did not, and did not offer, to, wash, clean, alter, repair, or perform other maintenance necessary for Plaintiffs' or the Class' [sic] required uniform." *Id.* at ¶ 111, 113.

32.     Plaintiffs further allege that "Defendants failed to supply sufficient articles of uniform clothing consistent with the average number of days per week worked by Plaintiffs and the Class requiring purchase of additional uniform items in order to cover the number of shifts that employees worked each week, with employees having to pay the cost at their own expense and with Defendants having failed to reimburse said costs." *Id.* at ¶ 120.

33.     Plaintiffs further allege that "for Plaintiffs and members of the Proposed Class who were paid at or near minimum wage, their effective hourly rate fell below the New York State minimum wage during the weeks they incurred unreimbursed expenses purchasing required uniforms." *Id.* at ¶ 122.

34.     Plaintiffs allege that Defendants' conduct violated Article 19 of the New York

Labor Law and its supporting regulations, including 12 NYCRR Part 146 of the Minimum Wage Order, and § 146-1.8(a) of the Hospitality Industry Wage Order. *Id.* at ¶ 118, 121.

35.    The Hospitality Industry Wage Order sets forth uniform maintenance pay rates that vary depending on (a) the location of the employer (New York City, Nassau/Suffolk/Westchester Counties, or the remainder of New York State); (b) the number of hours worked by the employee per week (over 30 hours per week, more than 20 hours but less than 30 hours per week, and 20 hours or less per week); (c) the year (increasing annually on December 31).  12 NYCRR § 146-1.7.

36.    Further, the uniform maintenance pay rates have steadily increased between 2018 and the present.  *See id.* (showing large employer pay in New York City increasing from "$18.65 High, $14.75 Medium, $8.90 Low on and after December 31, 2018" to "$19.90 High, $15.75 Medium, $9.50 Low on and after January 1, 2024").

37.    Plaintiffs allege that they and members of the class are owed uniform maintenance pay throughout their employment during the Class Period. *See* Complaint (Ex. A), ¶¶ 1, 26, 116-17.

38.    Plaintiffs allege that Chick-fil-A brand restaurants employ an estimated 2,400 people across New York State, all of whom "qualify as hospitality industry fast food workers under § 146-3.13 of the Hospitality Industry Wage Order." *Id.* at ¶ 2.

39.    Although two of the three plaintiffs allege that they worked full time for at least a portion of their employment with an independent franchisee, Complaint (Ex. A), ¶¶ 60, 74, for the purposes of establishing CAFA jurisdiction, CFA, Inc. assumes that medium uniform maintenance pay applies to each putative class member (medium pay is for employees who work between 20 and 30 hours a week), 12 NYCRR § 146-1.7(a). CFA, Inc. will also apply the uniform maintenance

pay prescribed for downstate outside of New York City (a compromise between the highest New York City rate and the lowest rate applicable only to upstate). Further, CFA, Inc. will assume a class size of 2,000 individuals per class year (less than the 2,400 alleged) to account for the growth in the number of Chick-fil-A branded restaurants in New York over the past six years. Finally, CFA, Inc. will conservatively assume that each class member worked only 40 out of 52 weeks in the year. This translates to claims for the following damages per calendar year, for uniform maintenance costs:

a.    June 18, 2018 to December 30, 2018 – 2,000 employees work 21 weeks (slightly over 75% of the 28 weeks in the time period) with uniform maintenance pay of $10.80 for total alleged damages of $453,600.

b.    December 31, 2018 to December 30, 2019 – 2,000 employees work 40 weeks with uniform maintenance pay of $11.80 for total alleged damages of $944,000.

c.    December 31, 2019 to December 30, 2020 – 2,000 employees work 40 weeks with uniform maintenance pay of $12.80 for total alleged damages of $1,024,000.

d.    December 31, 2020 to December 30, 2021 – 2,000 employees work 40 weeks with uniform maintenance pay of $13.75 for total alleged damages of $1,100,000.

e.    December 31, 2021 to December 31, 2022 – 2,000 employees work 40 weeks with uniform maintenance pay of $14.75 for total alleged damages of $1,180,000.

f.    January 1, 2023 to December 31, 2023 – 2,000 employees work 40 weeks with uniform maintenance pay of $14.75 for total alleged damages of $1,180,000.

g.    January 1, 2024 to June 18, 2024 – 2,000 employees work 18 weeks (slightly over 75% of the 24 weeks in the time period) with uniform maintenance pay of $15.75 for total alleged damages of $567,000.

40.    Thus, assuming these conservative hours per week and weeks per year worked, and conservative uniform maintenance pay rates, the amount in controversy based on the Complaint's allegations regarding uniform maintenance pay total $6,448,600 and would exceed the

jurisdictional threshold of $5,000,000.

41.     Further, Plaintiff Torres alleges that he spent $150 dollars a year purchasing portions of the required Chick-fil-A uniform and that he should have been reimbursed for this amount.  Complaint (Ex. A), ¶¶ 66, 119-123.

42.     Thus, conservatively, CFA, Inc. estimates that for each of the six years in the statute of limitations there is a claim that 2,000 class members spent $75 per year on required uniforms for damages of $900,000.  Given these additional alleged damages, the total damages claimed by Plaintiffs total approximately $7,348,600.

43.     Plaintiffs also request a judgment that includes attorneys' fees. *See* Complaint (Ex. A), Prayer for Relief. Courts in this jurisdiction have routinely found that claims for attorneys' fees can be included in CAFA amount-in-controversy calculations, and that claims for such fees in typical New York Labor Law cases could plausibly amount to one third of the total damages of recovery. *See, e.g., Metcalf v. TransPerfect Translations Int'l, Inc*., 632 F. Supp. 3d 319, 327 (S.D.N.Y. 2022) (considering attorneys' fees in CAFA threshold calculation and reasoning that courts typically award attorneys' fees representing one-third of the total recovery).  As such, Plaintiffs' claim for attorneys' fees and costs should be estimated to total, at least, an additional $2,449,533.33.

### 3.     *Summary of Amount in Controversy.*

44.     Although CFA, Inc. expressly denies Plaintiffs' allegations—and expressly denies that they or the putative class that they purport to represent are entitled to any of the requested relief—the amount in controversy associated with Plaintiffs' claims for the period June 18, 2018 through the filing of the Complaint plainly exceeds the $5,000,000 threshold set forth under 28 U.S.C. § 1332(d)(2).

45.     As such, the third jurisdictional requirement under CAFA is satisfied. *See* 28.

U.S.C. § 1332(d)(2).

### III.    THE OTHER PREREQUISITES FOR REMOVAL HAVE BEEN SATISFIED.

46.    As set forth above, the Complaint does not explicitly specify the amount of monetary damages sought, and in any event this Notice of Removal is filed within 30 days of CFA, Inc.'s receipt of the Complaint. *See* 28 U.S.C. § 1446(b).

47.    As Plaintiffs originally filed this action in the Supreme Court of the State of New York for the County of New York, removal to the United States District Court for the Southern District of New York, is proper under 28 U.S.C. §1441(a).

48.    As required by 28 U.S.C. § 1446(d), CFA, Inc. will provide notice of this removal to Plaintiffs through their attorneys of record.

49.    As required by 28 U.S.C. § 1446(d), a copy of this Notice will be filed with the Clerk of Court for the Supreme Court of the State of New York, County of New York.

50.    CFA, Inc. has sought no similar relief.

51.    If any questions arise as to the propriety of the removal of this action, CFA, Inc. requests the opportunity to present a brief in support of its position that this case is removable and that CAFA's limited exceptions to federal jurisdiction are inapplicable.

WHEREFORE, CFA, Inc., desiring to remove this case to the United States District Court for the Southern District of New York, prays that the filing of this Notice of Removal shall affect the removal of this action to this Court.

Respectfully submitted,

Dated: July 18, 2024
     New York, New York

MORGAN, LEWIS & BOCKIUS LLP

By: */s/ Lincoln O. Bisbee*
     Lincoln O. Bisbee
     Lucas Hakkenberg
     101 Park Avenue
     New York, New York 10178
     Tel: (212) 309-6000
     lincoln.bisbee@morganlewis.com
     lucas.hakkenberg@morganlewis.com

     *Attorneys for Defendant*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 18, 2024, the foregoing Notice of Removal, including the attached exhibits, was filed via the ECF filing system and served by email and Federal Express mail on the following:

Mohammed Gangat, Esq.
675 Third Avenue, Suite 1810,
New York, NY 10017
mgangat@gangatpllc.com

*Attorney for Plaintiff*

I affirm that the foregoing is true under penalties of perjury.

*/s/ Lincoln O. Bisbee*
Lincoln O. Bisbee